# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**RICHARD L. LAMBERT,**

     **Petitioner,**

**v.**                                  **Case No. 5:16-cv-00579-02PRL**

**SECRETARY, DEPARTMENT OF
CORRECTIONS, and FLORIDA
ATTORNEY GENERAL,**

     **Respondents.**

_____/

## <u>ORDER</u>

Petitioner, a Florida prisoner, instituted this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. Dkt. 1. He also submitted an amended memorandum in support of his petition (Dkt. 12), which the Court deemed to be the operative memorandum in support of the petition (Dkt. 13). At the Court's direction, Respondents responded to the petition and filed relevant portions of the state court record. Dkt. 14. Petitioner filed a reply in support of his petition. Dkt. 15. The Court has reviewed the entire record. Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 8(a).

Upon consideration, the Court concludes that the petition is due to be dismissed as untimely.

## I.    BACKGROUND

Petitioner was charged with one count of sexual battery on a person under 12 years of age (count one) and one count of lewd or lascivious molestation on a child under 12 years of age (count two).  Dkt. 14-1 at 11.[1]  If a jury found Petitioner guilty as charged, he faced life in prison.  *Id.* at 121-22.  The State filed notices of its intent to use out-of-court statements from the victim in the case at trial and its intent to offer evidence at trial showing that, in addition to the current case, Petitioner molested his ten-year-old step-daughter in the 1980s.[2]  *Id.* at 68-74.  Petitioner, through counsel, objected, and the trial court scheduled a hearing for February 8, 2012.  *Id.* at 75-79, 121.  That day, before the hearing began, the prosecutor offered a plea deal, whereby the State would accept a prison term of 25 years as to the second count followed by lifetime sex offender probation; the State would also drop the first count.  *Id.* at 121-22, 138.  Petitioner accepted the deal and entered a best interest plea.  *Id.* at 135-38.  The trial court accepted the plea and sentenced Petitioner to 25 years in the Department of Corrections with 576 days

---

[1] Citations to the state court record are to the page numbers assigned when it was filed in CM/ECF.

[2] The State represented that Petitioner pled guilty to a charge of lewd or lascivious act on a child under 16 and was sentenced to nine years in prison.  Dkt. 14-1 at 69; *see also id.* at 391 (Petitioner stating that he "was sentenced in 1986 to 9 years in prison followed by 3 years probation for lewd and [lascivious] molestation on a child under 12 years of age.").

credit for time served, plus lifetime sex offender probation; it also imposed a
$10,000 fine.  *Id.* at 89-91, 138.  Less than a week later, Petitioner (through
counsel) filed a motion to withdraw his guilty plea.  *Id.* at 94-96.  The trial court
denied that motion after a hearing.  *Id.* at 145-50.

Petitioner timely appealed his judgment and sentence to the Fifth District
Court of Appeal ("Fifth DCA").  *Id.* at 152-62.  After his counsel filed a brief
pursuant to *Anders v. California*, 386 U.S. 738 (1967) (Dkt. 14-1 at 152-62),
Petitioner filed a pro se brief (*id.* at 167-70).  The Fifth DCA issued a per curiam
affirmance on September 4, 2012 (*id.* at 175; *see also Lambert v. State*, 96 So. 3d
912 (Fla. 5th DCA 2012)), and mandate issued on September 28, 2012 (Dkt. 14-1 at
177).

On May 13, 2013[3],  Petitioner filed a pro se motion for postconviction relief
in state court.  *Id.* at 179-90.  The trial court ultimately denied the motion on July
18, 2013.  *Id.* at 224-51.  Petitioner filed a pro se appeal, and the Fifth DCA per
curiam affirmed on January 28, 2014.  *Id.* at 253; *see also Lambert v. State*, 149 So.
3d 33 (Fla. 5th DCA 2014).  Mandate issued on March 18, 2014.  Dkt. 14-1 at 255.

While that motion was pending before the trial court, Petitioner filed another
pro se motion for postconviction relief on July 30, 2013.  *Id.* at 257-67.  That
motion was dismissed on September 3, 2013 because it did not include a proper

---

[3] All filing dates for the Petitioner are pursuant to the mailbox rule.

oath. *Id.* at 269-70. Petitioner then filed a pro se sworn motion for postconviction relief on September 17, 2013 (*id.* at 272-82) and a duplicate of that motion on October 31, 2013 (*id.* 284-93). On November 25, 2013, the trial court treated the motion as an amendment to ground two of the May 2013 motion for postconviction relief and denied it. *Id.* at 295-331. Petitioner filed a pro se appeal. *Id.* at 333-43. The Fifth DCA per curiam affirmed on August 5, 2014 (*id.* at 348; *see also Lambert v. State*, 146 So. 3d 1201 (Fla. 5th DCA 2014)), and mandate issued on September 26, 2014 (Dkt. 14-1 at 349).

While all the previous motions for postconviction relief and related appeals were pending, Petitioner filed a pro se motion to correct illegal sentence in the trial court on January 27, 2014. *Id.* at 351-55. The trial court denied the motion on March 12, 2014. *Id.* at 356-64. Petitioner filed a pro se appeal. *Id.* at 365-66, 369-81. The Fifth DCA per curiam affirmed on August 5, 2014 (*id.* at 386; *see also Lambert v. State*, 146 So. 3d 1201 (Fla. 5th DCA 2014)[4]), and mandate issued on September 26, 2014 (*id.* at 388).

On May 12, 2014, Petitioner filed a pro se motion to reduce or modify sentence in the trial court. *Id.* at 390-96. The trial court denied the motion on June

---

[4] The Fifth DCA issued two separate per curiam affirmances in Petitioner's cases on this date. Thus, they both have the same citation in the official reporter. The first per curiam affirmance (for Case No. 5D14-7) appears at 2014 WL 3882441. The second per curiam affirmance (for Case No. 5D14-959) appears at 2014 WL 3882452.

24, 2014.  *Id.* at 397.  Petitioner filed a pro se appeal, but it was dismissed on August 11, 2014 because the order was not appealable.  *Id.* at 399.

On August 12, 2014, Petitioner filed a pro se motion for postconviction DNA testing (*id.* at 401-09), which was denied (*id.* at 411-13).  Petitioner filed a pro se appeal.  *Id.* at 415-26.  The Fifth DCA per curiam affirmed on February 3, 2015 (*id.* at 431; *see also Lambert v. State*, 160 So. 3d 455 (Fla. 5th DCA 2015)), and mandate issued on March 27, 2015 (Dkt. 14-1 at 433).

While that appeal was pending, on December 1, 2014, Petitioner filed another pro se motion for postconviction relief in the trial court (*id.* at 435-43).  The trial court denied the motion because it was untimely, successive, and procedurally barred.  *Id.* at 445-481.  Petitioner filed a pro se appeal.  *Id.* at 483-95.  The Fifth DCA per curiam affirmed on  May 26, 2015 (*id.* at 500; *see also Lambert v. State*, 169 So. 3d 1194 (Fla. 5th DCA 2015)), and mandate issued on July 24, 2015 (Dkt. 14-2 at 2).

In July 2015, Petitioner filed another pro se motion for postconviction relief in the trial court.  Dkt. 14-2 at  4-11. The trial court dismissed the motion and found it successive and procedurally barred.  *Id.* at 13-50.  Petitioner filed another pro se appeal.  *Id.* at 52-64.  The Fifth DCA per curiam affirmed on March 29, 2016.  *Id.* at 69; *see also Lambert v. State*, 189 So. 3d 795 (Fla. 5th DCA 2016).  The Fifth DCA then ordered Petitioner to show cause why he should not be prohibited from

filing any further appeals, petitions, pleadings, or motions pertaining to his sentence and conviction unless reviewed and signed by an attorney licensed to practice in the State of Florida. Dkt. 14-2. at 71. On April 20, 2016, the Fifth DCA concluded that Petitioner was "abusing the judicial process and should be barred from further pro se filings." *Id.* at 73. It prohibited him from filing any further pro se pleadings concerning his criminal case with the Fifth DCA. *Id.* Mandate issued on May 10, 2016. *Id.* at 75.

Petitioner filed his petition for writ of habeas corpus in this Court on September 16, 2016. Dkt. 1. He subsequently submitted an amended memorandum in support. Dkt. 12. Respondents filed a response, arguing that the petition should be dismissed with prejudice because it was not timely filed. Dkt. 14. Petitioner filed a reply and argued that the statute of limitations should be equitably tolled. Dkt. 15. Thus, the petition is ripe for review.

## II. __DISCUSSION__

### A. The Petition Is Untimely.

Respondents argue that the petition is due to be dismissed because it is untimely under the one-year statute of limitations in 28 U.S.C. § 2244(d)(1).[5] In his reply, Petitioner agrees that the petition is untimely under the statute. Dkt. 15 at 1.

---

[5] Section 2244 is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996. Because Petitioner filed his petition after that date, AEDPA and its statute of limitations apply.

The Court agrees that the petition was not timely filed. Petitioner's judgment and sentence were affirmed on direct appeal on September 4, 2012. The judgment and sentence became final 90 days later—on December 3, 2012—when Petitioner's time to seek review in the Supreme Court of the United States expired. *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F. 3d 1273, 1274-75 (11th Cir. 2006) (concluding that the time to seek Supreme Court review ran from the date the DCA entered its judgment affirming petitioner's convictions, not the date it issued its mandate). Pursuant to 28 U.S.C. § 2244(d)(1)(A), the one-year statute of limitations began running the next day. *See San Martin v. McNeil*, 633 F.3d 1257, 1266-67 (11th Cir. 2011).[6]   It ran for more than five months until Petitioner filed his May 13, 2013 motion for postconviction relief, at which point it was tolled pursuant to § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").

From that point forward, Petitioner had a properly filed motion for postconviction relief pending—and the statute of limitations remained tolled—until the Fifth DCA issued its mandates on his September 17, 2013  motion for

---

[6] It does not appear that any of the other triggers for the statute of limitations apply. *See* 28 U.S.C. §§ 2244(d)(1)(B)-(D).

postconviction relief and his January 27, 2014 motion to correct illegal sentence on September 26, 2014. *Bismark v. Sec'y, Dep't of Corr.*, 171 F. App'x 278, 280 (11th Cir. 2006) (finding that state motion for postconviction relief is pending for purposes of § 2244(d)(2) until state appellate court issues its mandate affirming trial court's denial of the motion).[7] After September 26, 2014, Petitioner did not have a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgement or claim" pending such that § 2244(d)(2) would further toll the statute of limitations.

As of that date, Petitioner had less than seven months remaining on his federal habeas statute of limitations—putting his deadline to file in April 2015. His federal petition for writ of habeas corpus was not filed until September 2016, making it untimely under the statute. Notably, his August 2014 motion for postconviction DNA testing did not toll the statute under § 2244(d)(2) because such a motion does not attack the legality of the underlying sentence or conviction. *Brown v. Sec'y for Dep't of Corr.*, 530 F.3d 1335, 1337-38 (11th Cir. 2008). Likewise, his December 1, 2014 motion for postconviction relief could not toll the statute of limitations because the state court found it untimely. *Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1350-51 (11th Cir. 2018). Finally, Petitioner's July

---

[7] In this Order, unpublished decisions of the Eleventh Circuit are cited as persuasive authority.

2015 motion for postconviction relief could not toll the statute of limitations

because the statute of limitations had already expired at that point. *Webster v.*

*Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000). Thus, Petitioner's petition for writ of

habeas corpus was not timely filed.

B.     Equitable Tolling Is Not Warranted.

Petitioner argues, however, that equitable tolling should apply, explaining:

> Petitioner has been on medications for psychological issues before his
> arrest and after his conviction. Petitioner could not rely on Law Clerks
> to help him in his research due to being paranoid. Petitioner was under
> the impression that he must exhaust all his State remedies . . . . Counsel
> failed to advise [Petitioner] about his § 2254 one year filing time
> restriction. Petitioner was not afforded counsel during any post
> conviction proceedings. [Petitioner] asks that his petition be granted
> due to his mental illness and in fact caused him to fail to meet the
> AEDPA filing deadline. His deadline was caused by his mental illness,
> his medication, his lack of education which is at the 6th grade
> comprehension level, and that he has no knowledge or does he
> understand or comprehend the Law . . . . [Petitioner] filed numerous
> post conviction motions in the understanding that he must exhaust all
> state remedies. When the Courts per curiam, [Petitioner] felt that the
> Court of Appeals did not adjudicate his claims on the merits.
> [Petitioner] would then file another motion in hopes that a Court in the
> State would address his merits. [Petitioner] was and this Honorable
> Court should agree that he was in "Due Diligence" seek a constitutional
> right of Due Process. During the time Petitioner was researching on his
> own due to being paranoid, he thought that he found new grounds to
> raise. So he did raise them unknown to him that his 3.850 motions were
> successive and untimely keeping in mind that Petitioner has mental
> health issues . . . . Petitioner's own mental state was, and is, his burden
> of extraordinary circumstances that stood in his way.

Dkt. 15 at 2-4 (internal numbering omitted). He also attached portions of the

transcript of the hearing at which he entered his guilty plea. In those excerpts, he told

the trial judge that he quit school in the sixth grade and did not get his GED, that he had been declared incompetent but not by a court of law, and that he had been treated and taken medications for mental illness. *Id.* at 8, 10.

In his amended brief in support of his habeas petition, he also claimed that he had been "declared incompetent by Mental Health at Waterman Hospital Eustis Florida," that "due to his mental health [issues] he accepted a plea in a distressed state of mind," that "his mental issues and his difficulty understanding the process of his hearing overwhelmed him into the plea," that he "has been off and on psychotropic medications since the mid to late 70's and has been baker acted on several occasions due to his mental illness," and that he was on psychotropic medication at the time of his plea. Dkt. 12[8] at 7, 10, 12, 17, 19.[9]  He argued that his "[m]ental deficiency even shows in his excessive motion writing," explaining that he "continued to attack basically the same [arguments] to the lower courts and appeal[s] court because he was under the impression that because the courts would not answer on his merits that he had not exhausted his state remedies." *Id.* at 11.  He attached

---

[8] Citations to this document are to the page numbers assigned when the document was filed in CM/ECF.

[9] The Court notes that this appears to be the first time that Petitioner has informed a court that a hospital declared him incompetent and that he has been "baker acted" (which the Court takes as a reference to the Florida Mental Health Act, commonly referred to as the Baker Act, Fla. Stat. §§ 394.451-394.47892)  several times.  The transcript of the plea hearing shows that Petitioner told that trial judge that he had been found incompetent but then answered "no" when asked if he had been found incompetent by a judge.  Dkt. 15 at 8-10.  The Court has reviewed the state court record submitted by Respondents.  It includes numerous state court filings from Petitioner, but none of them appear to mention specifically that Waterman Hospital found him incompetent or that he had been "Baker Acted."

Florida Department of Corrections Informed Consent for Psychotropic Medication

forms for Remeron (also known as Mirtazapine) and Prozac (also known as

Fluoxetine HCL), which appear to show that he was prescribed these drugs in 2012.

*Id.* at 27-28.[10]  Finally, the brief states, "[I]n Florida prisons no one is allowed to

work in the law library with any sex charge.  So in fear that inmates would tell other

inmates of his charges and might retaliate against him.  He had no help in the

understanding of laws and rules of any court."  *Id.* at 15.[11]

     A habeas petitioner is "entitled to equitable tolling only if he shows (1) that

he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way and prevented timely filing."  *Holland v. Florida*,

560 U.S. 631, 649 (2010) (internal quotation and citation omitted).  The petitioner

bears the burden of proving circumstances that justify the application of equitable

tolling.  *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1209 (11th Cir. 2014)

(citation omitted).  A petitioner "must plead or proffer enough facts that, if true,

would justify an evidentiary hearing on the issue."  *Id.* (internal quotation and

---

[10] According to the forms, both drugs are used to treat symptoms associated with depressive disorders.  Dkt. 12 at 27-28.

[11] This does not appear to be a claim that the prison system prevented Petitioner from working in the law library.  Rather, it appears to relate to a claim Petitioner made in state court that inmate law clerks would not help him because he had been convicted of molesting a child.  *See, e.g.*, Dkt. 14-1 at 379 (asserting, under oath, that he had to file motions on his own "[b]ecause the law clerks will not help him in any way [due] to his charge.").  In any event, the record is replete with filings from Petitioner—including his federal habeas petition and amended memorandum in support (Dkts. 1, 12)—that liberally cite judicial opinions and statutes.  Thus, he clearly had access to legal research materials.

citation omitted). The allegations supporting equitable tolling must be specific and not conclusory. *Id.* (citation omitted). Because equitable tolling is an "extraordinary remedy," it is "limited to rare and exceptional circumstances and typically applied sparingly." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (internal quotation and citation omitted).

On review, the Court concludes that Petitioner has not shown entitlement to equitable tolling. None of the cited grounds—his pro se status and lack of law clerk help, his ignorance of the law generally and the one-year statute of limitations specifically, his lack of formal education, and his mental health issues—qualify him for this extraordinary remedy. Neither pro se status, lack of inmate law clerk help, nor general lack of legal knowledge is an extraordinary circumstance justifying equitable tolling. *Rich v. Dep't of Corr. State of Fla.*, 317 F. App'x 881, 883 (11th Cir. 2008) (citation omitted) (pro se status); *Gonzalez v. Sec'y, Fla. Dep't of Corr.*, No. 3:15-cv-1049-J-32JBT, 2018 WL 2100043, at *3 (M.D. Fla. May 7, 2018) (lack of access to inmate law clerks); *Perez v. Florida*, 519 F. App'x 995, 997 (11th Cir. 2013) (per curiam) (citation omitted) (lack of legal education and related confusion or ignorance about the law). Likewise, Petitioner's claim that he did not know about the statute of limitations fails because "*pro* se litigants, like all others, are deemed to know of the one-year statute of limitations." *Spears v. Warden*, 605 F. App'x 900, 904 (11th Cir. 2015) (citation omitted). The fact that Petitioner has

only a sixth-grade education also does not warrant equitable tolling. *Cerrito v. Sec'y, Dep't of Corr.*, 693 F. App'x 790, 792 (11th Cir. 2017) (finding equitable tolling was not warranted where petitioner could not read beyond a second-grade level).

That leaves Petitioner's claim that his mental health issues prevented him from timely filing his federal habeas petition. "[M]ental impairment is not *per se* a reason to toll a statute of limitations." *Hunter*, 587 F.3d at 1308 (citation omitted). Rather, the alleged impairment must have affected Petitioner's ability to file a timely habeas petition before tolling is warranted. *Id.* The standard is rigorous: "To be entitled to equitable tolling on the basis of mental illness, a petitioner must show more than that it is difficult for him to understand and act upon his legal rights; rather, he must show that he was incapable of preparing and filing a federal habeas petition . . . any earlier than he did." *Hay v. Sec'y, DOC*, No. 3:15-cv-619-J-39PDB, 2017 WL 3387385, at *4 (M.D. Fla. Aug. 7, 2017) (internal quotation and citation omitted).

In *Hunter v. Ferrell*, the Eleventh Circuit concluded that an evidentiary hearing on the question of equitable tolling was necessary. In that case, the petitioner presented evidence that he had a full-scale IQ of 59 (which was lower than 99 percent of the population); he had been "diagnosed with chronic, irreversible mental retardation" that impaired his judgment, insight, and problem-

solving skills, making him unable to function independently; he was illiterate; he

suffered from severe expressive speech aphasia which made it difficult for him to

communicate intelligibly; he could not manage his own affairs; and he had to rely

on other prison inmates and prison law clerks to assist him with prior legal filings.

*Hunter*, 587 F.3d at 1308-09.  On those facts, the Eleventh Circuit found that there

was a fact issue as to whether the Petitioner's mental impairment affected his ability

to timely file a federal habeas petition.  *Id.*

By way of contrast, in *Lawrence v. Florida*, 421 F.3d 1221(11th Cir. 2005),

the petitioner alleged that his full-scale IQ was 81 and that he had "suffered from

mental impairments his entire life." *Id.* at 1226-27. The Eleventh Circuit concluded

that equitable tolling was not warranted because the petitioner had not established a

"causal connection between his alleged mental incapacity and his ability to file a

timely petition."  *Id.* at 1227.

Like the petitioner in *Lawrence*, Petitioner has failed to establish a causal

connection between his alleged mental health issues and his inability to file a timely

federal habeas petition.  Petitioner does not provide any details about his mental

health problems beyond stating that he has been "off and on" medications since the

1970s and claiming to be "paranoid." Dkt. 12 at 17; Dkt. 15 at 2.  But equitable

tolling is not warranted simply because a petitioner has taken psychotropic

medications. *Hay*, 2017 WL 3387385, at *2-4 (denying request for equitable tolling

where petitioner stated that "as a confused layman on psychotropic medication at [a] mental health prison unit, his untimeliness should be excused").[12]  And, while Petitioner claims to have been found incompetent by a hospital and "Baker Acted" several times, he does not explain when these events occurred, the nature of the problems that necessitated his treatment, or how long the problems lasted.  Without some link to the inability to file a timely federal habeas petition, these events are not enough to warrant equitable tolling.  *See, e.g.*, *id.* at *4 & n.4 (denying request for equitable tolling where petitioner was diagnosed with bipolar disorder and schizophrenia and was admitted under the Baker Act about two-and-a-half years before filing his federal habeas petition); *Fleming v. Scutt*, No. 2:12-cv-11925, 2013 WL 173420, at *3 (E.D. Mich. Jan. 16, 2018) (finding equitable tolling not warranted even though petitioner had been involuntarily committed in the past).

As the Eleventh Circuit has instructed, to invoke equitable tolling, Petitioner must show a causal connection between his mental health problems and his failure to file a timely federal habeas petition.  Conclusory assertions of causation do not suffice.  *Scott v. Tucker*, No. 3:11cv64/WS/EMT, 2012 WL 1314087, at *6 (N.D. Fla. Mar. 15, 2012), *report and recommendation adopted*, 2012 WL 1313500 (N.D. Fla. Apr. 17, 2012).  Here, Petitioner offers nothing beyond conclusory assertions

---

[12] Notably, it does not appear that Petitioner has been taking psychotropic medications continuously since his guilty plea. *See, e.g.*, Dkt. 14-1 at 186 (stating, under oath, on May 13, 2013 that "he was now off medication").

that his mental health prevented him from filing a timely petition.  He does not explain how his mental health issues caused the late filing.  The closest he comes is claiming that he "could not rely on Law Clerks to help him in his research due to being paranoid."  Dkt. 15 at 2.  But this claim does not explain how his mental health issues prevented him from timely filing a federal habeas petition on his own, and, as explained above, lack of assistance from inmate law clerks is not an extraordinary circumstance that warrants equitable tolling.

Petitioner does not claim that his ability to communicate is hampered or that he is incapable of managing his affairs, like the petitioner in *Hunter*.  To the contrary, the state court record shows that Petitioner made numerous pro se filings both in the trial court and the appellate court.  At least two of them were filed during the time for which Petitioner needs equitable tolling (starting in April 2015).  While ultimately meritless (and, in the opinion of the Fifth DCA, abusive), these filings are—for the most part—comprehensible, written in proper English, reasonably logical, and organized.  Almost all of them include multiple citations to case law and statutes.  It also does not appear that Petitioner had any problems complying with state court-ordered deadlines, and he has timely complied with this Court's deadlines.  Petitioner also successfully filed a federal habeas petition in this Court.  This is a not a case, like *Hunter*, where inmate law clerks drafted and filed Petitioner's legal papers for him.  Indeed, Petitioner claims that they would not help

him at all, leaving him to his own devices.  Taken together, this evidence shows

that, despite his asserted impairments, Petitioner was generally capable of doing the

sort of work necessary to timely file a habeas petition and, thus, that he is not

entitled to the extraordinary remedy of equitable tolling.[13]  *See Fox v. McNeil*, 373

F. App'x 32, 34 (11th Cir. 2010) (refusing equitable tolling in part because

petitioner was able to file several pro se motions in state court and ultimately filed a

federal habeas petition); *Lewis v. Warden*, 641 F. App'x 878, 881 (11th Cir. 2016)

(finding equitable tolling not warranted in part based on petitioner's conduct during

state habeas hearing and demonstrated awareness of deadlines and ability to

respond to them in timely manner).[14]

Finally, even if Petitioner had shown that an extraordinary circumstance

prevented him from timely filing his federal habeas petition, he has not

demonstrated sufficient diligence in pursuing his federal rights.  "The diligence

required for equitable tolling purposes is reasonable diligence, not maximum

---

[13] On this point, the Court rejects Petitioner's conclusory assertion that his repetitive state court filings demonstrate his "mental deficiency."  Dkt. 12 at 11.  At most, the repetitive filings indicate a lack of legal understanding, but, as explained above, lack of legal knowledge is not a basis for equitable tolling.

[14] Petitioner did not explicitly request a hearing on equitable tolling, but the Court finds that one is not warranted.  The decision whether to hold an evidentiary hearing on equitable tolling is committed to the Court's sound discretion. *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1292 (11th Cir. 2002), *overruling on other grounds recognized by Jones*, 906 F.3d at 1351.  While an evidentiary hearing may be necessary where material facts are in dispute, it is not required where no basis exists to believe that further inquiry would help the petitioner prove entitlement to equitable tolling.  *Id.*; *San Martin*, 633 F.3d at 1271-72.  Here, Petitioner has offered no allegations or supporting evidence suggesting that further inquiry by the Court would help him prove entitlement to equitable tolling.

feasible diligence." *Holland*, 560 U.S. at 653 (internal quotations and citation omitted). To demonstrate his diligence, Petitioner points to his multiple state court motions and appeals (some of which were untimely, successive, and procedurally barred) as well as his unwarranted assumption that, "because the [state] courts would not answer on his merits[,] he had not exhausted his state remedies." Dkt. 12 at 11; *see also* Dkt. 15 at 3. But Petitioner does not explain what, if anything, he did to determine his federal remedies and the time for pursuing them. Thus, he has not established sufficient diligence to warrant equitable tolling. *See Sallie v. Chatman*, 34 F. Supp. 3d 1272, 1298 (M.D. Ga. 2014) (finding no diligence for purposes of equitable tolling where petitioner presented insufficient evidence that he attempted to research the statute of limitations period; attempted to draft his own petition; tried to obtain standard habeas corpus forms; or made any attempt to file a timely pro se federal habeas petition); *see also Minor v. Chapdelaine*, 678 F. App'x 695, 697 (10th Cir. 2017) (concluding that state court motion for postconviction relief that was timely under state law but filed after the federal habeas deadline expired did not support claim of diligence for purposes of equitable tolling because "we do not believe Appellant's alleged diligence in state court could or should cure his lack of diligence in federal court even for the purposes of equitable tolling").

In summary, Petitioner's federal petition for writ of habeas corpus was not timely filed. He has not shown an entitlement to equitable tolling on this record. He

also has not invoked any other reason to toll the statute of limitations, such as a claim of actual innocence. Moreover, the record is far from supporting a claim of actual innocence. For example, in his state court motion to reduce or modify sentence, Petitioner asked the trial court to order that he be physically and chemically castrated and then released to house arrest (Dkt. 14-1 at 392), during which he hoped to speak at schools about "how to spot a [pedophile] or a sexual predator" (*id.* at 394). He also stated, "What the Defendant did was wrong and the Defendant is sorry for what he did and is ashamed of it." *Id.* at 391. Because the petition was untimely and there is no reason to toll the statute of limitations, it is due to be dismissed.

## III.     <u>CONCLUSION</u>

For the reasons stated above, the Court finds that Petitioner's petition for writ of habeas corpus (Dkt. 1) is untimely and, thus, dismisses the petition with prejudice. The Clerk is instructed to enter judgment accordingly, terminate any pending motions, and close the file.

In addition, a certificate of appealability and leave to appeal in forma pauperis are denied. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A [COA] may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a showing, Petitioner "must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (internal citation and quotation omitted), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and citation omitted). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis at this time.

      **DONE AND ORDERED** at Tampa, Florida, on April 4, 2019.


                            */s/ William F. Jung*                
                            **WILLIAM F. JUNG**
                            **UNITED STATES DISTRICT JUDGE**




**COPIES FURNISHED TO:**
Counsel of Record
Petitioner, pro se